SEGUNDA ROSADO DOMÍNGUEZ ET AL., Plaintiffs and Appellees, *v.* MUNICIPALITY OF JUNCOS, Defendant and Appellant.

No. 8250. Argued December 3, 1941.—Decided January 16, 1942.

*J. Valldejuli Rodríguez* for appellant.   *Francisco González Fagundo* for appellees.

Mr. Justice De Jesús delivered the opinion of the court.

The Puerto Rico Reconstruction Administration, a federal agency commonly known as P.R.R.A.; about the year 1938 built for the Municipality of Juncos an aqueduct using the waters of the Gurabo River, at a place known as Quebrada Grande in the ward (*barrio*) of Río, Las Piedras. Under an agreement entered into by the Municipality of Juncos and the PRRA, the former was to furnish all the necessary materials and the PRRA undertook to pay the expenses incurred for labor and for the transportation of all the materials to the place where they were to be used.

The appellees, who are the owners of a 15-acre (*cuerdas*) property adjoining the Gurabo Rivers just where the dam of the aqueduct was built, brought against the Municipality of Juncos, this action of denial of servitude and for damages. After stating in their complaint that they owned the said property, they alleged:

"2. That the Municipality of Juncos, represented by its mayor, Agapito González, has entered upon the said property and through its agents and employees has destroyed coffee trees, digging ditches and carrying away dirt from said property, and has moreover built some houses thereon and a road across the property for the purpose of erecting thereon a water-supply system, for the Municipality of Juncos, and has established a servitude of aqueduct, erecting a dam, without any title or right thereto and without compensating the plaintiffs in any way therefor.

"3. That the property described in the first paragraph of this complaint is free from any lien or encumbrance in favor of the Municipality of Juncos or of any other person, whether natural or artificial.

"4. That the acts performed by the Municipality of Juncos have caused damages to the plaintiffs which conservatively estimated amount to two thousand dollars."

Based on the above allegations, they closed their complaint with the following prayer:

"Wherefore they pray the court to render judgment declaring that the property described in this complaint is not subject to any servitude in favor of the Municipality of Juncos, and adjudging the latter to demolish any structure that it may have erected thereon, and further to pay to plaintiffs two thousand dollars, with costs including attorney's fees."

The Municipality of Juncos denied having erected the works in question on any land owned by the plaintiffs, and on the contrary alleged that the whole works had been erected on land of public ownership. It set up, besides, other defenses which it is not necessary to state in detail for a determination of this case.

After a trial was had and the evidence introduced by both parties had been weighed, the trial judge made the following findings:

"(a) That the plaintiffs are the sole owners of the 15-acre property; (b) that Segunda Rosado Domínguez and Manuel Rosado Domínguez, as co-owners of the above-described property, stated their protest to the Puerto Rico Reconstruction Administration and to the Mayor of Juncos against the acts done on their property by the engineers and employees who were building the aqueduct; (c) that the Juncos aqueduct was built by and for the Municipality of Juncos, and that the Puerto Rico Reconstruction Administration was not and could not be liable for any acts done or performed on land belonging to the plaintiffs; (d) that the walls of the dam rest on land belonging to the plaintiffs and that ditches were dug, pipes laid, and other constructions erected on the same; (e) that the Mayor of Juncos took certain steps to lawfully establish a servitude of aqueduct over the land of the plaintiffs; (f) that on March 5, 1938, the Municipality of Juncos entered into a contract with Andrés Díaz for the assignment of certain land and other rights; (g) that the Puerto Rico Reconstruction Administration donated to the Municipality of Juncos the sum of $35,000 for the building of its aqueduct; (h) that the materials for the construction thereof were purchased under the supervision of the Puerto Rico Reconstruc-

tion Administration; (*i*) that the plaintiffs sought to take, jointly with the Mayor, all the necessary steps in order to lawfully constitute the servitude in question; (*j*) that the plaintiffs never consented to the acts done on their property.''

In view of the above findings, the lower court gave the following judgment:

''For the reasons stated in the opinion which is attached to the record and made a part of this judgment, the court sustains the complaint and consequently holds that the property described in this action is not subject to any servitude in favor of the Municipality of Juncos which is hereby ordered to demolish any work erected thereon and further adjudged to pay the costs, disbursements, and $500 as attorney's fees.''

Feeling aggrieved by that judgment, the Municipality of Juncos appealed to this court and it has assigned six errors, the first of which reads as follows:

''The court erred in rendering a judgment against the weight of the evidence, as the latter showed, not only as a whole but specially by the testimony of the plaintiffs themselves that the works of the Juncos aqueduct had been erected on public land.''

We attach so much importance to the first assignment that a discussion thereof relieves us from the necessity of considering the remaining assignments.

The action prosecuted by the plaintiffs, as already stated by us, is one of denial of servitude and for damages. As to the latter, the lower court held that the plaintiffs had failed to produce any evidence tending to prove them, and as to the main action, contrary to the statements of the trial judge, there has been no proof that the defendant municipality has performed any act on land belonging to the plaintiffs that could only have been performed pursuant to a servitude of aqueduct over said land. In his findings above transcribed, said judge states that it had been established by the evidence of both parties that the walls of the dam rested on land owned by the plaintiffs and that ditches were dugged, water pipes

laid, and other works erected thereon. These facts which were essential to the cause of action relied on have not been established. Sections 32 and 34 of the Law of Waters provide as follows:

"Article 32. The natural bed or channel of a river or creek is the land covered by its waters at their ordinary highwater mark.

"Article 34. The following are of public ownership:

"1.  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;

"2. The natural·beds or channels of rivers to the extent covered by the waters thereof during their highest ordinary rise."

Let us see now what the evidence of both parties shows as to the place where the dam and its abutments were built and the water pipes laid.

Emilio F. Saavedra, a civil engineer who directed the works of the aqueduct, was called as a witness by the plaintiffs and testified:

"Q. Did you ever see any great rise of the river?

"A. I saw three rises.

"Q. Have or have not such rises reached or overflowed the land on which the works lay?

"A. They overflowed the dam and the pipes we had laid there.

"Q. Which means that they . . . overflowed?

"A. Yes, sir.

"Q. Do you mean to say that they overflowed the works?

"A. About 1 or 1.50 meters over the spillway.

"Q. That is, over where there is laid . . .?

"A. Over where the pipes are laid." (Tr. of Ev., p. 30.)

On page 32 of the transcript of the evidence, upon being further examined the witness deposed:

"Q. Are the abutments of the dam unsupported or do they rest . . .?

"A. They rest on the bank.

"Q. Do they rest on the property of Don Andrés Díaz which he gave you permission to enter?

"A. Yes, sir."

Cross-examined by the defendant, he testified:

"Q. Just one question. You said, what did you mean by saying that the abutment of the dam lay on that property? Does it lie on the gully beyond the place reached by the waters in ordinary rises or closer to the place not reached by the waters of the river in ordinary rises?

"A. Do you know, counselor, what the abutments of a work are?

"Q. I do. Where are they?

"A. Here is the plat; they are on the bank.

"Q. And has the water in ordinary rises overflown that?

"A. Yes, sir. Two streams meet there: water from the brook and water from the river. We had to dry up the brook and dynamite a new channel to deviate the course of the brook. When the freshets of the river and of the brook joined the flow of water was larger. While standing on the floor of the barrack I saw a freshet, and soon the water was lapping my feet. The current there is very strong, it is one hundred per cent steep.

"Q. Have those waters always joined?

"A. I could not tell you.

"Q. But have you not been there?

"A. I have. The gully must be climbed on all fours, and when making the survey I almost had to be fastened with a rope, because it is a cliff which gave us a lot of trouble.

"Q. And those rises, did they overflow the place as the result of your having changed the course of the brook, or was the overflow caused by ordinary rises?

"A. The rises usually overflowed the place. When I went there there were freshet traces (vallados). Whenever we make a survey for some works the first thing we do is to ascertain the highest point reached by the river.

"Q. Do you take into account the river bed?

"A. We do." (Tr. of Ev., pp. 36–37.)

On further cross-examination by the defendant, he said:

"Q. So that the pipes are also over the river gully?

"A. Yes, sir.

"Q. That is, the place mentioned by the witness as being overflown by the river in ordinary rises?

"A. Yes, sir." (Tr. of Ev., p. 44.)

The plaintiff Segunda Rosado, on direct examination testified:

"Q. Have they built any works on that property?

"A. Yes, sir.

"Q. What is over that property?

"A. The aqueduct.

"Q. Which aqueduct.

"A. The Juncos aqueduct.

"Q. What have they done for constructing such aqueduct?

"A. Built a dam.

"Q. What else?

"A. Houses, but they have already demolished them. . . ." (Tr. of Ev., p. 69.)

Such was the oral evidence introduced by the plaintiffs relating to the alleged servitude. They also introduced, over the objection of the defendant, a sketch of the location of the dam, the abutments, etc. [3] Said sketch, however, apart from the inadmissibility because of the failure of its author to appear for cross-examination concerning its contents, does not throw any light at all on the point in controversy, for it fails to show in any way the ground overflown by the river during the highest ordinary rises, so as to determine, in accordance with the above-transcribed provisions of the Law of Waters, whether the land where said structures are located belongs to the plaintiffs, or whether, on the contrary, it is public land, in which latter case the plaintiffs have no right to enjoin such works.

The testimony of Segunda Rosado, in so far as it is stated therein that the Juncos aqueduct was built on her property, is a mere conclusion of the witness, for such testimony is not in conflict with that of the engineer Saavedra or that of the witnesses for the defendant to the effect that all the walls of the dam, its abutments, and the aqueduct pipes are placed on land which, although apparently lying within the property of the plaintiffs, is, by operation of law, public

land, inasmuch as the same is covered by the waters of the river at their highest ordinary rise.

The evidence for the defendant on the above particulars is as follows:

José Castro Martínez testified that he was an engineer in the Division of Public Land of the Department of the Interior and that he went to see the dam in order to ascertain whether it had been built on public land; that to do this he noticed the traces left by the freshets, and that the dam, the walls, and the abutments are built upon the bed (*cauce*) of the river. (Tr. of Ev., p. 104–105 and 107.)

José Lao Díaz testified that at the time of the trial he was 69 years old and that he had always lived in that ward (*barrio*); that he had witnessed many freshets of the river and that the dam and the abutments are within the area covered by the waters of the river at their highest ordinary rise.

Emilio F. Saavedra, a witness called by the defendant, stated that he had seen three ordinary freshets of the Gurabo River at that place and, answering questions put by the defendant, said:

"Q. And you say that at those three freshets which you saw, the waters flooded the boundaries of the dam?

"A. Yes, sir." (Tr. of. Ev., p. 119.)

Really, we are unable to understand how the trial judge could have found that the above-mentioned works had been erected on ground belonging to the plaintiffs. Perhaps the averments of their complaint are true; but on the evidence in the record it is impossible to sustain such a judgment as that which orders the Juncos municipality *to demolish any structure that it may have erected on the property of the plaintiffs,* without even specifying the structures involved, especially if it is borne in mind that what has been ordered demolish relying on such an insufficient evidence as that introduced by the plaintiffs, is an aqueduct which according to the proof, cost $80,000. [4] Although we agree with the

appellees that their property is presumed to be free from encumbrances, yet the burden was on them to prove that the works of the aqueduct were erected on land belonging to them as they allege, so as to make it incumbent on the defendant to prove the existence of the servitude enabling it to erect such works at the place involved.

As the judgment is not supported by the evidence, the same must be reversed, with costs against the plaintiffs but without including attorney's fees.

Mr. Justice Snyder took no part in the decision of this case.